IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON GROSSINGER,** | : | |
| **Individually and as Executive Director of** | : | |
| **BUNNYS FLOWERS,** | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-2510 |
| | : | |
| **MARK LICHTY,** *et al.*, | : | |
|     Defendants. | : | |

### MEMORANDUM

**BEETLESTONE, J.**                                                                                                      **JULY 28, 2025**

      Brandon Grossinger filed this *pro se* case individually and as Executive Director of an entity called Bunnys Flowers,[1] naming as Defendants Mark Lichty, Adam Lichty, Oak Tree Properties, Inc., Lichty Farm, LLC., and David Groverman.[2] The gravamen of the Complaint involves Bunny's dispute with its landlord and possible eviction from a property, allegedly in violation of federal grant obligations and in violation of Grossinger's constitutional rights and the Americans with Disabilities Act ("ADA"). Grossinger also filed repeated requests for a temporary restraining order that were denied following a hearing. (ECF No. 40.) Because Bunny's failed to obtain counsel and pay the filing fee for the case as ordered, the entity was dismissed as a plaintiff. (ECF No. 41.) Grossinger was granted leave to proceed *in forma pauperis* for his own claims (ECF No. 7), meaning that his individual claims remain subject to

---

[1] Grossinger's spelling of the name "Bunnys Flowers" is inconsistent across his *pro se* pleadings. The Court will refer to the entity as "Bunny's."

[2] The caption of the Complaint left blank the names of the Defendants. Grossinger later filed a Motion to amend the caption to name the Lichtys, Oak Tree Properties, Inc., Lichty Farm, LLC, and Groverman. (ECF No. 5.)

statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B). For the following reasons, the case is dismissed.[3]

I. FACTUAL ALLEGATIONS[4]

Grossinger alleges that he is a person with disabilities protected by the ADA due to Lyme Disease. (Compl. at 1, 10; ECF No. 15 (sealed).) The Complaint consists of 81 pages, mostly constituting numerous excerpts from dated and undated text messages, emails, legal citations, and other material. Very little information is provided in narrative form. While not entirely clear, Grossinger has had a dispute with Mark Lichty about driveway access to and zoning permits for a parcel of property, and other issues involving Bunny's use of the land for its educational programing and farming. Within the Complaint is a copy of a paper signed by Lichty and Grossinger to authorize Grossinger to act as Lichty's agent with respect to a permit application for a driveway, referred to elsewhere as a PennDot Highway Occupancy Permit

---

[3] Because the claims are subject to statutory screening, the Court need not address the motion to dismiss filed by the Defendants Mark Lichty, Adam Lichty, and Oak Tree Properties, Inc. (ECF No. 48), which will be denied as moot.

[4] The factual allegations set forth in this Memorandum are taken primarily from the Complaint. (ECF No. 2.) The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system.
Grossinger included allegations of fact in numerous post-Complaint pleadings. The Federal Rules of Civil Procedure, however, do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'" (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . ."). Where noted, additional factual information may be cited from other *pro se* pleadings filed by Grossinger in connection with the request for a temporary restraining order so that the true nature of the claims may be understood.

("HOP"). (Compl. at 9, 22, 76.) Also within the Complaint is a Conservation Program Contract with the Natural Resources Conservation Service of the United States Department of Agriculture listing Bunny's as the participant in a conservation grant. (*Id*. at 24.) Bunny's agreed to implement and maintain conservation practices at the property located at 3669 Cold Spring Creamery Road, Doylestown, Pennsylvania. (*Id*.)

Attached to Grossinger's Motion to Amend Caption is a "Partnership Agreement Bunny's Flowers and Groverman LLC Land/Ground Lease Agreement."[5] (ECF No. 5 at 10-16.)

---

[5] In an Amended Motion for Temporary Restraining Order, Grossinger states that a lease between Mark Lichty and Gary Glasman was signed on January 29, 2021. (ECF No. 9-6 at 1.) He did not attach a copy of a lease agreement with that date to the Complaint or to the Motion but he did file it subsequently as an exhibit (ECF No. 11-3) and it is arguably referred to in the Complaint. He claims in the Motion that the lease obligated the landowner to support infrastructure, including a compliant driveway meeting PennDot HOP regulations. (ECF No. 9-6 at 1; *see also* ECF No. 11-3 at 49 (providing in lease that "Landlord should help me sign the permit application documents . . . if the landlord approved it in connection with the Premises").) He further claims this lease was allegedly transferred to himself and Bunny's on February 7, 2022. (*Id*.) He did not attach a copy of that transfer agreement to the Complaint or Motion either, but he did file it later as an exhibit. (ECF No. 11-1.) It provides "This is the official agreement of a 5 year term for Bunnys Flowers . . . to farm and to use Marks Lichtys land for various purposes at his ultimate discretion. . . . At any point in time Mark the owner reserved the right to break the agreement under reasonable circumstances if the tenant is illegally or unethically using the land." (*Id*. at 2 (misspellings and incorrect grammar in original).) It refers to a "previous sub lease agreement" and states that "[t]he purpose of the MOU is to transfer the original agreement agreed upon by Yizhak Glasman [] and mark Lichty for Brandon Grossinger to have a direct relationship with Farm Owner, Mark Lichty, as opposed to the original sublease agreement." (*Id*.) The version submitted, which appears to be an assignment of the underlying lease between Glasman and Lichty, is not signed by Lichty. (*Id*. at 6.)

In a Corrected Motion for Emergency Temporary Restraining Order (ECF No. 10), Grossinger refers to an April 24, 2025 "Concurrency Form" by Mark Lichty on behalf of Oak Tree Properties "binding Plaintiff's use of the leased farm property" to the five-year USDA conservation grant. (*Id*. at 1.) None of the exhibits submitted with the Corrected Motion contain that alleged agreement.

Finally, he mentions a "treaty" signed by Bunny's and the Lenape Nation of Pennsylvania that Mark Lichty encouraged him to execute, also not attached to the Complaint or Motion. (ECF No. 9-9.) He claims, because of the treaty, that "this is not a mere lease dispute" but that a documented "Indigenous Treaty support [is] being undermined," conservation work is being obstructed, and cultural reconciliation efforts are being trampled. (*Id*. at 2.) Apparently,

3

The agreement provides that Groverman agrees to lease to Bunny's for $1 annually a four acre "site" – otherwise unspecified anywhere in the agreement – for a term of five years from January 21, 2022 to January 21, 2027, for the purpose of growing flowers and food, maintaining a farm stand, and educational programs. (*Id.*) Bunny's is responsible for obtaining any permits and maintaining insurance. (*Id.* at 11-12.) The agreement further provides that Bunny's and Groverman are entering into a partnership for any "revenue produced by this agreement." (*Id.* at 13.) The Agreement was signed by Grossinger, for Bunny's Flowers as the tenant, and David Groverman. (*Id.* at 15, 16.) Grossinger asserts that PennDot signed a driveway permit with March Lichty in 2021 that was "reaffirmed" in 2024. (Compl. at 3.) He claims the mention of a "paved driveway" in the permit is a false representation (*id.*), apparently contending that no driveway was constructed.

A notice to vacate dated April 30, 2025, directed to Bunny's as the "tenant" by Mark Lichty and Oak Tree Properties, Inc. as the landlord, provided that Bunny's had until the end of the day on June 30, 2025 to vacate the Cold Spring Creamery Road property.[6] (*Id.* at 26.) Perhaps related to their dispute, in an undated text message, Grossinger claimed to Lichty that his telling the local Township of a problem with "water access was not retaliation or escalation – it was lawful and ethical action" required of him as the director of Bunny's. (*Id.* at 6.) In a text message on May 8, 2025, Grossinger told Lichty that his son Adam was calling Bunny's members threatening to shut off water to the property on June 30. (*Id.* at 13.) He claims that

---

his goal was to open a school. (*Id.* at 9-10.) Nothing related to this "treaty," states a federal cause of action.

[6] At the hearing on the request for a temporary restraining order, counsel for Lichty represented to the Court that the state court landlord-tenant case has been withdrawn pending the outcome of this federal litigation.

4

because Lichty was party to a "federal contract" – apparently a reference to the Conservation Program Contract between Bunny's and the government – he is "interfering with a federal contract after signing it." (*Id*. at 17.)

Grossinger asserts that Adam Lichty acknowledged in writing that he is the paid property manager for the Cold Spring Creamery Road property but his role was not disclosed to Bunny's as tenant. (*Id*. at 22, 62.) He allegedly contacted Bunny's board members demanding financial documents while threatening eviction and claiming that he had no knowledge of the PennDot driveway requirement/permit. (*Id*.) Grossinger asserts his conduct was "a retaliatory posture against a known ADA-protected party." (*Id*. at 22.) Grossinger submitted a complaint to the United States Department of Justice Civil Rights Division on May 6, 2025, claiming ADA violations, "landowner retaliation," and interference with a federally funded nonprofit's operation. (*Id*. at 27.) The DOJ responded that it would take no action on the complaint. (*Id*. at 29.)

Grossinger also corresponded with Buckingham Township Code Enforcement Officer Jim Kettler about a temporary agricultural building permit for the property "to support educational farming activities." (*Id*. at 34.) The permit listed Oak Tree Properties as the permit holder, even though Bunny's was "the legal applicant and operating party," but the town refused to update the permit. (*Id*.) Kettler responded to Grossinger's emails about the permit by telling him that the permit had to be in the name of the property owner, who is ultimately responsible for the property. (*Id*. at 41.) Mark Lichty allegedly used the purported misidentification to deny access to USDA-funded conservation equipment and refrigerated infrastructure, demand that Bunny's remove its assets from the property as a condition to discussing the grant, and threatened eviction by citing zoning violations. (*Id*. at 34.) He emailed that the "Township has

5

said you cannot have school/educate on the property – and that is the cornerstone of Bunny's Flower's mission. As the landowner I can be penalized for your zoning violations. Bunny's Flowers has no choice but leave. . . . I can't sign any permits that you might need in the future." (*Id*. at 49.) The email demanded that Bunny's Flowers vacate the property by June 30. (*Id*. at 51.)

In the Complaint Grossinger asserts claims for (1) breach of contract, (2) a First Amendment violation based on "nonprofit speech and retaliation," and (3) federal grant obstruction on behalf of Bunny's in his capacity as its Executive Director (*id*. at 1-2, 17, 62). He also asserts a claim for violation of the First Amendment and the ADA in his own capacity (*id*. at 1-2, 10). (*See also* ECF No. 9-1 (Am. Emergency Mot. for TRO) at 3 (stating that Grossinger alleges a claim for retaliation and discriminatory practices under the ADA and Bunny's raises a claim for interference with USDA funded infrastructure, breach of contractual obligations under the USDA contract, and breach of fiduciary duties).) There is no monetary demand in the Complaint. As all claims asserted by Bunny's have been dismissed for failure to prosecute following the hearing on July 9, 2025 (ECF No. 41), only Grossinger's own claim for violation of the First Amendment, the ADA, and any possible state law claims remain in the case.

## II.     STANDARD OF REVIEW

The Court has granted Grossinger leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Grossinger is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

When allowing a plaintiff to proceed *in forma pauperis* the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

**III.    DISCUSSION**

Grossinger's federal law claims are not plausible. His ADA claim is not plausible because he has not named an entity against which the statute applies. The ADA's protections apply to employment, public services, and public accommodations and services operated by private entities. *See generally* 42 U.S.C. §§ 12101-12203. Although the ADA is broad in its remedial effects, it is notably limited by the scope of the entities to which it applies. Title I of the ADA governs large employers, *see* 42 U.S.C. § 1211, *et seq.*, Title II governs public entities, *see id.* § 1213, *et seq.*, and Title III governs public accommodations, *see id.* § 12181, *et seq.* Private individuals are not public entities within the scope of Title II and privately owned real estate is not a "place of accommodation" within the meaning of Title III. *Samuel v. Delaware Cnty. Hous. Auth.*, No. 22-2451, 2023 WL 4494163, at *9 (E.D. Pa. July 11, 2023) (dismissing the ADA claim with prejudice because the defendant's apartment building, regardless of whether it accepts federal funds in the form of housing vouchers, is not a public accommodation within the meaning of the ADA); *Noe v. Ray Realty*, No. 19-1455, 2020 WL 506459, at *1 n.1 (S.D.N.Y. Jan. 31, 2020) (dismissing ADA claims because the ADA does not apply to private landlords); *Stevens v. Ashley Mgmt. LLC*, No. 15-462, 2016 WL 632005, at *3 (W.D.N.Y. Feb. 17, 2016) (holding that plaintiff's ADA claim failed under both Title II and Title III because defendants did not qualify as "public entities" under Title II and plaintiff's apartment did not constitute a "place of public accommodation" under Title III); *Ayyad-Ramallo v. Marine Terrace Assocs. LLC*, No. 13-7038, 2014 WL 2993448, at *5 (E.D.N.Y. July 2, 2014) ("[T]he ADA does not apply to private landlords, even if the premises are used for publicly subsidized housing.") (citation omitted). Because the Defendants and the property do not fall within the reach of the ADA, Grossinger's ADA claim involving the privately owned farmland parcel fails as a matter of law.

To the extent Grossinger attempts to assert a First Amendment claim, it too is not plausible. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."). Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). Applying these tests, courts routinely find that private landlords are not state actors. *See, e.g.*, *Hussein v. New Jersey*, 403 F. App'x 712, 716 (3d Cir. 2010) (*per curiam*) (concluding that the district court properly dismissed the plaintiff's claims against landlords because they were not state actors and the plaintiff "present[ed] no allegation giving rise to a plausible inference that the Landlords conspired with state actors to deprive [him]

9

of his constitutional rights"); *Allen v. Nelson*, No. 25-1287, 2025 WL 1809997, at *2-3 (E.D. Pa. July 1, 2025) ("Allen's due process claim based on Nelson's conduct in her capacity as Allen's landlord is not plausible because Nelson is not a state actor." (citing *Groman*, 47 F.3d at 638 and collecting cases)). As there is no plausible inference that the Defendants exercised the power of the state, acted in concert with state officials,[7] or were interdependent with the state, the First Amendment claim is dismissed with prejudice.

Having dismissed Grossinger's federal claim, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims for breach of contract or otherwise. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled,

---

[7] Passing references in the Complaint and other *pro se* pleadings to Grossinger's speaking with township code or zoning officials or the PennDot HOP process are insufficient to allege state action by the named Defendants on the basis of acting in concert with state officials. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he citizenship of an LLC is determined by the citizenship of its members." *Zambelli*, 592 F.3d at 420. "[W]here an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC." *Id.* (internal quotations omitted); *see also Voorhees v. Tolia*, 761 F. App'x 88, 91 (3d Cir. 2019) (*per curiam*) ("As for the entity defendants, they are limited liability companies and are deemed citizens of every state of which one of their members is a citizen."). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Grossinger does not allege the citizenship of the parties in the Complaint. Rather, his exhibits indicate Pennsylvania addresses for himself and some of the Defendants (ECF No. 2 at 15, 57) and he provided a Pennsylvania address for himself when using the Court's electronic docketing tool (*id.* at 81), which suggests that he and some, if not all, of the Defendants are Pennsylvania citizens. Accordingly, he has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue. He also fails to allege the amount in controversy requirement has been met since he makes no specific monetary demand in the Complaint.

For these the reasons, the Complaint will be dismissed. Grossinger's federal law claims will be dismissed with prejudice and his state law claims will be dismissed without prejudice for

lack of subject matter jurisdiction. No leave to amend the federal law claims will be granted since any attempt would prove futile, *see Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002), but Grossinger may reassert his state law claims in an appropriate state court where diversity of citizenship will not be a factor. All of Grossinger's pending motions will be denied,[8] and the defense motion to dismiss will be denied as moot. An appropriate Order of dismissal will be entered separately. *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, J.**

---

[8] One of Grossinger's motions bears brief further discussion. In a "Final Emergency Omnibus Motion" (ECF No. 54) he claims he was in a "paradox" because (1) the Court denied *in forma pauperis* status to Bunny's, (2) that although he was personally granted that status the Complaint was never ordered served by the United States Marshal, and (3) he was yet asked at the hearing on his motions for a temporary restraining order whether the defendants had been served. (ECF No. 54 at 1-2.) He claims he lacked authority to "serve on behalf of the nonprofit." (*Id*. at 2.) There is no paradox or injustice arising from the Court's making this inquiry. First, as an *in forma pauperis* litigant, Grossinger's Complaint is subject to statutory screening before it is ordered to be served upon the named Defendants. Second, Grossinger misstates the record of the hearing. The Court did not fault Grossinger for failing to serve the Complaint. The Court asked Grossinger, repeatedly, if he had served his motion for a temporary restraining order on any of the Defendants since only Adam Lichty appeared at the hearing. In any event, the bigger issue here is that Grossinger cannot represent Bunny's on its claims and that his federal claims lack any legal merit as discussed above. At bottom, this is a contract dispute or landlord/tenant matter that belongs in state court.